(70 South. 616)

No. 20239.

PATOUT BROS. v. MAYOR AND BOARD OF TRUSTEES OF CITY OF NEW IBERIA.

(Jan. 10, 1916.)

*(Syllabus by Editorial Staff.)*

1. INJUNCTION ☞105—SUBJECTS OF PROTECTION—ENFORCEMENT OF ILLEGAL CRIMINAL STATUTES.

The enforcement of an illegal ordinance making it an offense to erect a livery stable in a city, will be enjoined as an interference with the property rights of a livery stableman who had hauled lumber to make an addition to his barn, though the work had not already been commenced.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. ☞105.]

2. MUNICIPAL CORPORATIONS ☞622—ORDINANCES—VALIDITY.

Though a municipality was authorized to enact ordinances to preserve the order and to provide and maintain the cleanliness and sanitary condition of the city, it could not enact ordinances forbidding the erection of livery stables within the residential portion of the city, for a livery stable is not a nuisance per se, and may be kept clean and sanitary.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1370; Dec. Dig. ☞622.]

O'Niell, J., dissenting.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Suit by Patout Bros. against the Mayor and Board of Trustees of the City of New Iberia. From a judgment for plaintiffs, defendants appeal. Affirmed.

L. O. Hacker, of New Iberia, for appellants. Cammack & Broussard, of New Iberia, for appellees.

PROVOSTY, J. The plaintiffs carry on a livery stable business in the city of New Iberia. They were about to enlarge their stable by erecting a new building when they were notified by the city authorities that if they did so they would be prosecuted criminally under an ordinance of the city. Thereupon they brought this suit enjoining the city authorities from enforcing said ordinance in the manner thus threatened.

The ordinance makes it an offense punishable by fine and imprisonment to "open up, begin, erect, maintain, run, or conduct or operate a livery stable within the residential portion of the city of New Iberia, without first having obtained the written consent of a majority of the property owners owning property within 300 feet of the place where said stable is proposed to be run or conduct-

ed"; and also without having obtained a permit from the board of trustees of the city.

This ordinance was adopted on May 26, 1905, and had, therefore, long been in existence when the plaintiffs sought to enlarge their stable in the manner stated. But plaintiffs contend that it is null for the reason, among others, that at the time it was adopted the city was not authorized by its charter to pass any ordinance regulating stables or fixing the limits within which they might be kept.

The city excepted to the suit on the ground that injunction does not lie to prevent the enforcement of a criminal law.

[1] It will be noted that the plaintiffs ask for the injunction only on the assumption of the ordinance being void. In denying the right to the injunction, the city is therefore taking the position that even on that assumption the injunction cannot be allowed.

In the case of Dobbins v. Los Angeles, 195 U. S. 241, 25 Sup. Ct. 22, 49 L. Ed. 177, the Supreme Court of the United States said:

"It is well settled that where property rights will be destroyed unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity."

In that case an injunction was maintained against an ordinance forbidding the erection of gas works within certain limits, and denouncing penalties for violation of the ordinance. The ordinance was held to be void for unreasonableness, and the injunction against its enforcement was maintained for the reason that:

"Being the owner of the land, and having partially erected the works, the plaintiff in error had acquired property rights, and was entitled to protection against unconstitutional encroachments which would have the effect of depriving her of her property without due process of law."

The complainant in that case was being deprived of property rights in two ways, both as owner of the land, and because works had been partially erected. In the case at bar, in like manner, the work of construction had begun to the extent of the lumber having been hauled and the place cleared; but we do not conceive that a commencement of construction upon the land is a necessary element in the problem; the ownership of the land itself would constitute a sufficient property right to serve as a foundation for suit, if sought to be unlawfully interfered with. By threatening the owner with fine and imprisonment if he ventures to make the use which he desires to make of his land, the city interferes directly with his property rights; and if such interference be unlawful; such owner may, under the doctrine of this Dobbins Case, as we understand it, have recourse to the equitable remedy of injunction. The legal situation is entirely different where property rights are not involved. Hoa Le Blanc v. City of New Orleans, 70 South. 212, ante, p. 243.

The case of Hottinger v. City of New Orleans, 42 La. Ann. 629, 8 South. 575, where the owner of a dairy was denied the right to enjoin the city from enforcing by criminal prosecution an ordinance making it unlawful to operate dairies within certain limits, must be held to have been overruled by the case of New Orleans Baseball Co. v. City, 118 La. 228, 42 South. 784, 7 L. R. A. (N. S.) 1014, 118 Am. St. Rep. 366, 10 Ann. Cas. 757, where the owner of a baseball park was allowed to enjoin the city from enforcing by criminal prosecution an ordinance making it unlawful to operate baseball parks within certain limits. The court in the latter case made the distinction which is made in the Dobbins Case, supra, between penal ordinances affecting property rights and all other penal ordinances. Of the latter character are the cases of Devron v. First Municipality, 4 La. Ann. 11, Levy v. Shreveport, 27 La. Ann. 620, State ex rel. City v. Judge, 48 La. Ann. 1448, 21 South. 28, Lecourt v. Superintendent, 49

La. Ann. 487, 21 South. 646, Boin v. Jennings, 107 La. 410, 31 South. 866, La. Oyster & Fish Co. v. Police Jury, 126 La. 522, 52 South. 685, and Hoa Le Blanc v. City, supra.

[2] On the question of the validity of the ordinance, we find that the city charter at the time the ordinance was adopted was Act 43, p. 84, of 1904, and that the only part of it from which the authority to pass such an ordinance could possibly be pretended to be derived, gives authority to the city only, as follows:

"Sec. 3. * * * To regulate and preserve the peace and good order of the town, and to provide and maintain its cleanliness and sanitary condition. * * * To pass by-laws and ordinances in regard to disorderly conduct and nuisances generally, or anything relating to the good government of said city; to regulate and prescribe limits for tippling shops, saloons, barrel houses, dramshops, and gambling houses; and to regulate, suppress and district houses of prostitution and assignation houses, and all places where indecent and * * * disorderly practices are carried on; to impose such fines and penalties for a breach of their by-laws and ordinances."

In Town of Crowley v. West, 52 La. Ann. 527, 27 South. 53, 47 L. R. A. 652, 78 Am. St. Rep. 355, it was held that a livery stable is not per se a nuisance, and that the authority to prescribe certain limits within which it shall not be lawful to keep one, cannot be derived from the general authority to suppress nuisances.

The rule in the interpretation of the charters of municipal corporations is that:

"Where a particular power is claimed for a municipal corporation, and particularly where private right is infringed or imperiled by the power claimed, any fair, reasonable doubt as to the existence and possession of the power will be resolved against the corporation and the power denied to it." 28 Cyc. 264.

In the present case there can be no doubt at all but that the authority has not been granted. It would have to result, if at all, from the authority given to "preserve the good order, and to provide and maintain the cleanliness and sanitary condition" of the town; and it could result from this only if

in order to keep a town clean and sanitary it was necessary to suppress stables,' which obviously is not a fact; and the proof of it is that what is meant by a stable not being per se a nuisance is that a stable may be, and ought to be, kept clean and sanitary.

Our conclusion is that there was no charter authority for enacting said ordinance, and that it is, in consequence, null.

Judgment affirmed.

O'NIELL, J., dissents.