No. 8408

COURT OF APPEAL

PARISH OF ORLEANS

———

OSCAR M. GWIN

versus

CITY OF NEW ORLEANS ET AL.

——— —

Court of Appeal

May 14/23

H J Stansbury

Dinkelspiel; J.

Plaintiff avers that on July 14th, 1921, the City
of New Orleans through the Building Department, City Engineer's
Office of said City, issued to the Pokorny Realty Company, of
this city, owners of the building No. 407 St. Charles Street,
in the square bounded by Perdido, Poydras and Carondelet
Streets, txxkkx a permit to have done and to do certain re-
pairs to the said building, at a cost of $2250, which work
consisted of repairs to decayed parts of said building where
necessary, including support to plate glass and floors of show
window.    Alleging further that the said Pokorny Realty Com-
pany had previously contracted with your petition/to do   the
said repair work, and that petition/for and on behalf of the
said Pokorny Realty Company applied for, and obtained, a per-
mit to do the said work on the aforesaid premises, paid $2.50
fee to the City Engineer's Office for said permit to make re-
pairs to said building and to show window on sidewalk, as afore-
said, and all of which was verbally explained to the City Engin-
eer's representative, and the said permit read as follows:

"This is to certify that Pokorny Realty Co., has com-
plied with all the provisions of Ordinance No. 6712, adopted
August 3, 1910, and permission is hereby granted to Pokorny
Realty Co., to build at s cost of $1250, "Repairs to Building".
Petitioner further alleges that a few days thereafter his em-
ployees began hauling material and also began to do the work
under his contract, when a representative of the City Engineer's
office notified petitioner verbally that he would not be able
to do any work on the show window.  Further alleges that on Aug-
ust 2nd, 1921, whilst engaged in doing certain work in the build-
ing in the inside, his foreman and two carpenters were arrested
and sent to the First Precinct Police Station and were prevented
from doing any work, and that petitioner's employees were refused
permission to enter into said building for the purpose of getting.

getting the permit issued, which was kept on the building. Petitioner avers that notwithstanding the issuance of said permit the city of New Orleans and the City Engineer's Office persisted in refusing to permit petitioner to do any work on said premises or to enter same for said purpose and threatened that an affidavit would be made against petitioner if he failed to comply with the order. Petitioner further alleges that the officers and agents of the city of New Orleans in violation of law and of said permit are acting arbitrarily, oppressive, unfair, and unconstitutional, depriving petitioner of his only means of earning a livelihood, and also in violation of the Constitution of the United States, and finally complaining that the acts of the city aforesaid, are unfair, unjust, inequitable and arbitrary and are done for the purpose of harassing petitioner in the pursuit of a lawful business and occupation, and that petitioner is a duly licensed building contractor, and that the aforesaid acts have damaged petitioner and xxx will continue to damage him unless the city of New Orleans, its agents and officers are prohibited from interfering with petitioner, and further have caused and are causing petitioner irreparable injury and damages, invading petitioner's personal and property rights, for which there is no adequate/xxxxxx compensation at law since neither the Police Authorities nor the city could be made to respond in damages; thxxxx faxx and that if he persists in carrying on the work as stated, he and his workmen will be arrested and harassed by the officers and agents of the City of New Orleans; therefore a writ of injunction is necessary to protect petitioner in the premises. Wherefore after the usual affidavit and security being furnished in a sum fixed by the Court, the prayer is that a writ of injunction be issued enjoining and restraining, Andrew McShane, Mayor of the City of New Orleans, John Klower, City Engineer, and Guy Moloney, Inspector of the Police of this city, from in any wise interfering with petitioner and his employees in the prosecu-

tion of said work, which work consists of repairs to all decayed parts of said building, wherever necessary, including supports to plate glass and floors of show windows: and that after due trial the injunction be maintained and the city and the authorities be enjoined from proceeding in the manner referred to. The petition was sworn to, bond given as required by law and the order of the Court was:

"The foregoing petition considered, let the City of New Orleans, John Klower, City Engineer, and Guy Molony, Inspector of Police show cause on Friday the 12th day of August, 1921, at 10:30 A. M., why writs of injunction should not issue as prayed.".

(Signed) Porter Parker
Judge."

Annexed to the petition are the permits referred to.

The answer of the City, through the Mayor, the City Engineer and the Superintendent of Police, to the rule to show cause, admit that a permit was issued on the date referred to, covering repairs on the building, not to exceed #1250, but defendants deny that authority was given to plaintiff to make any repairs on, to reconstruct or to build any show windows or do any act in xxx violation of the Building Code or of the law. Further averring that contrary to the provisions of Ordinance No. 6712, known as the "Building Code", the said plaintiff and his employees attempted to obstruct the public streets and sidewalks by building thereon certain show cases for a distance of sixteen inches beyond the property line and that said acts were in violation of the said ordinance, contrary to law, and constituted an obstruction to the street and a public nuisance. And averring further that on the date in question plaintiff and his employees endeavored to violate the ordinances and laws aforesaid by obstructing the public property, and that a representative of the City Architect's office ordered said work discontinued in so far as it constituted an encroachment on the public streets; xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx that

23

plaintiff's employees **ex** pretended that they would go inside and work on other parts of the building, but in reality continued to work on the show windows in question behind the barricade which was put in front of the place; that thereupon plaintiff and his employees were duly arrested in accordance with law, and an affidavit made in the First Recorder's Court against plaintiff under ordinance no. 6713 aforesaid, which cause is still pending in the First Recorder's Court.

And assuming the position of plaintiff in reconvention, aver that petitioner has threatened to obstruct and encroach upon the public streets, which act constitutes a nuisance, that defendants are entitled to an injunction prohibiting and restraining plaintiff from further action in the premises; that the damages caused to the defendants are irreparable, and defendants have no adequate remedy at law. They pray that plaintiff's suit be dismissed, his demand rejected at his cost and that there be judgment in reconvention in favor of defendants against plaintiff enjoining and restraining plaintiff from performing any work on the show windows and from obstructing and encroaching the public streets and sidewalks, and for all general relief.

~~An amended petition~~ An amended petition filed by Oscar M. Swin, reiterates all the averments contained in the original petition, and claiming further that the ordinance in question does not apply and has never been construed to apply to repairs but only to new structures, and the prayer is that the/~~xxxxxx~~ ordinance be declared unconstitutional, null, void and of no effect, and also declared discriminatory and finally prays for general relief.

On these issues the parties went to trial.

Without entering into the testimony in this case, it is sufficient to say that the evidence adduced shows beyond controversy, that plaintiff, went over the building and had made arrangements under the permit issued to do work on the premises and show windows, and in the course of the work it was shown that the workmen are repairing and putting up portions of the front of

2-4

the building where the showcase stood, they had began to install stairway and had also taken out the rotton wood at the bottom of the show window when they were interrupted by the City Engineer's representative who tried to stop them and they were informed by the City Architect that they must take the window off the street and do it immediately, if not they were threatened with being jailed and in fact some of the men were arrested; it was further shown that the show window in front of the building extended sixteen inches out beyond the property line, that there was no intention to move the show window out, xxxxx and to all the testimony that was offered, counsel for the City objected on the ground that the facts involved show nothing but a legal question as to whether or not the plaintiff was or was not violating the city ordinance. The objections were referred to the merits and the testimony throughout this record shows what was stated at the beginning.

The evidence introduced by the City of New Orleans does not in any way materially change the issue in this case, and does not satisfy us that this was work done otherwise than the permit of the city engineer's office permitted to be done.

In the case of the State vs. Moritz Schuchardt, to be found in the 42nd $\frac{3}{4}$Ann. at p. 49, it was held: (the ordinance in question being identical with the one referred to in this case) the court goes on to say at p. 50:

"But the question presented for discussion is, whether the power conferred by the latter part of the paragraph includes the authority to forbid necessary repairs to such buildings with the same kind of materials used in the original construction?

If repairs and reconstruction was synonymous terms, the power would undoubtedly be included.

But a very wide difference exists between the meaning of the two terms; and besides, the ordinance does not only forbid the repairs of the building, but even of a portion of the same.

In the legislative enactment no reference is made to repairs, and the power therein conferred is in terms restricted to the prohibition of the reconstruction of a former wooden building with the same or similar materials. The reconstruction of a building presupposes a previous destruction of demolition of such building, and in such a case the operation could in no sense be deemed or said to be a repairing of such building, for the repairing of a building must, in the very nature of things, presuppose the contemporaneous existence of the building.

Hence it follows that the sole object contemplated by the law maker was to authorize the City Council to prohibit the reconstruction in wood, within the limits to be by it prescribed, of buildings originally built of wood, and existing as such at the date of the ordinance, but which might subsequently be destroyed by fire or otherwise, or which might thereafter be demolished by the owners. But acting under that legislative mandate, which avowedly was its only authority in the premises, the council went a great step further and it proposed to forbid the repairing of the roofs of such buildings, except by using in such repairs non-combustible materials. Hence came the present prosecution of this defendant for having replaced on the roof of his building old shingles by new ones. Evidently the danger from fire was not increased by that operation, and therefore it can not be argued that he acted in violation of the spirit or the letter of the statute, from which the city could derive its sole power in the premises."

And at page 52 the Court goes on:

"Now, the power in a municipal corporation to control the owners of property within its limits in using or building their property in a manner different from their inclination, desire or convenience, can not be ranked among the implied and incidental powers which such corporations may exercise in the absence of
legislative
express/~~legislative~~ mandates. It is a useful power, presuma-

bly necessary to provide for the greatest good of the great-
est number, but it is, at the same time, a power in derogation
of common right, and unless it be expressly conferred, it will
never be presumed to exist.  Succession of Irwin, 33 An. 68, and
authorities therein cited.

Except as to incidental power, and which need not be,
though they usually are, mentioned in the charter, the charter
itself, is the measure of the authority to be exercised, and the
general disposition of the courts in this country has been to
confine municipalities within the limits that a strict construc-
tion of the grants of powers in their charters will assign to
them, thus applying substantially the same rule that is applied
to charters of private corporations. "

The Court finally held that the ordinance in question
was null and void, and was ultra vires.

In the case of Crowley vs. West, 52 An. p. 534, in
case of discrimination and violation of a city ordinance, and
the effect thereof, the court says:

"We find nothing in the record which would justify us
in answering this question in the affirmative.  Ordinances of
municipal corporations, purporting to have been adopted in the
exercise of implied, or general authority, must be "lawful,"
"reasonable," "impartial". "fair", "general," "consistent with
public policy", and "not in contravention of common right."
Dillon on Mun. Corporations (4th Ed.)."

The Court goes on to say that "the business to be af-
fected is a legitimate business, and there is not a syllable
of testimony in the record before us going to show it is con-
ducted otherwise than in a proper manner."

And the/authorities here quoted are in consonance with
the/authorities quoted in plaintiff's brief, State vs. Mahner,
43 Ann. 496, State vs. Gantz 124 La. 535, and New Orleans
Baseball Association vs. the City of New Orleans, 118 La. 235.
All of these authorities hold that where an ordinance is dis-

criminating òr which permits a public official to discriminate it is unconstitutional, null and void.

The permit granted by the City Engineer's office in this case permitted the repairs in question, and we can see no violation of any ordinance introduced by the defendant, and there is no law which permits the city to enact ordinances denying to one, the right to do certain things, whilst giving to others the right to do the same things.

For the reasons assigned, it is ordered, adjudged, and decreed, that the judgment of the Court aquo be and the same is hereby affirmed, costs of both Courts to be paid by the defendant.

-Judgment affirmed-